Daniel Srourian, Esq. (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES BRUNO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOLI NUTRITION, INC.<br>Defendant. | Case No. 2:26-cv-11039<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY DEMAND</u>** |

Plaintiff James Bruno ("Plaintiff"), on behalf of himself and all others similarly situated, allege the following class action complaint (the "Action") against Defendant Goli Nutrition, Inc. ("Defendant"), for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of his counsel as follows:

## NATURE OF THE ACTION

1. This is a class action on behalf of consumers who purchased Goli gummies dietary supplements marketed as zero sugar (collectively, the "Products")[1].

2. Defendant markets and advertises the Products on their front labels as containing "ZERO SUGAR" (the "Representation"). However, unbeknownst to consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal labeling standards.

3. Based on their ingredient composition and label declarations, the Apple Cider Vinegar and Ashwagandha+ Products contain, on information and belief,

---

[1] The Products are: (1) Goli Zero Sugar Apple Cider Vinegar Gummies ("Apple Cider Vinegar"); (2) Goli Zero Sugar Ashwagandha+ Gummies ("Ashwagandha+"); and (3) Goli Zero Sugar Pre+Post+Probiotics Gummies ("Pre+Post+Probiotics").

approximately 2 grams of allulose per labeled serving, and the Pre+Post+Probiotics Product contains, on information and belief, approximately 1 gram per labeled serving. The Products' labels also list allulose without the ingredient marker prescribed for a zero-sugar claim. 21 C.F.R. § 101.60(c)(1)(i)–(ii). Defendant's Zero Sugar Representation is therefore false, misleading, and impermissible.

4. Defendant's own labeling admits the Products contain allulose as part of their binding system. "Sugars" are defined as "the sum of all free mono and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii). The Products, therefore, do not contain "Zero Sugar" as claimed on the Products' packaging and advertising.

5. Defendant made its zero-sugar Representation to induce health-conscious consumers, like Plaintiff, to purchase the Products. But Plaintiff alleges that this representation is misleading and false. The Products repeatedly represent that they contain "ZERO SUGAR" on their front panels. Those categorical outside-panel statements expressly represent that no sugar was added to the Products and are nutrient-content claims under 21 C.F.R. § 101.13(b) and (b)(1). "ZERO SUGAR" is a reasonable variation or synonym of the terms "no added sugar," "without added sugar," and "no sugar added," and therefore must comply with § 101.60(c)(2). 21 C.F.R. § 101.13(b)(4).

6. For as long as consumable goods have been sold, "health-washing," which is the instigation of a sale of a consumer product by making it appear healthier

than it is, has led consumers to buy products that either do not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of "health-washing". Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits. To compound matters, the misrepresentations made on the Products are not only potentially harmful but command a price premium consistent with these misrepresentations that Plaintiff and Class members would not have paid had they known that Defendant's representations are false and misleading. The Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause health risks.

7. Against this backdrop, Plaintiff and the class members, on behalf of himself and all others similarly situated, bring this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's intentional failure to ensure that the Products were distributed, produced, and sold in a manner consistent with advertising. As a result of the foregoing, Plaintiff and Class Members (defined below) were harmed by paying a price premium for the Products which they otherwise would not have paid due to the misrepresentations made on packaging and in advertising or would not have purchased the Products at all.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity

jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant.

9. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

10. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in California and therefore is at home in this State.

11. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendant does business in this Judicial District.

## THE PARTIES

**Plaintiff James Bruno**

12. Plaintiff James Bruno resides in Island Lake, Illinois. In June 2025, Plaintiff purchased Goli Zero Sugar Apple Cider Vinegar Gummies from a Walmart store in Algonquin, Illinois, for approximately $11.99.

13. Accordingly, the Zero Sugar Representation was part of the basis of Plaintiff's bargain, in that Plaintiff would not have purchased the Products on the same terms had he known that the representation was untrue. Furthermore, in making his purchases, Plaintiff paid a price premium due to Defendant's false and misleading

Zero Sugar Representation. Plaintiff, however, did not receive the benefit of the bargain because the Products were not, in fact, free of sugar. Instead, they contained allulose, a sugar. Had Plaintiff known that Defendant's representation was false and misleading, he would not have purchased the Products or would have paid substantially less for them. Plaintiff purchased the Products for himself for personal use during the class period. Plaintiff bought the Products because he relied on Defendant's representation that the Products contained "ZERO SUGAR." The Products are sold at a price premium and are more expensive than comparable gummy dietary supplements. Plaintiff relied on this representation—and had he known the truth, he would not have purchased the Products or would have paid significantly less for them.

14. Plaintiff remains interested in purchasing gummy dietary supplements and other products that are truly sugar-free. However, he cannot know for certain whether the false labeling and marketing of the Products have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Zero Sugar Representation, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of dietary supplements. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a

sugar.

**Defendant Goli Nutrition, Inc.**

15. Defendant Goli Nutrition, Inc., is a Canadian corporation with its principal place of business in 8430 Santa Monica Boulevard, #204, West Hollywood, California 90069. Defendant manufactures, formulates, labels, advertises, markets, distributes, and sells the Products in California and throughout the United States, including this District.

16. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.

## FACTUAL BACKGROUND

**Consumers Seek Out and Pay More for Products That Contain No Sugars**

17. It is well known that consuming added sugar can present a variety of dangerous health conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right amount of added sugar" is "[a]s little as possible."[2] Sugar-sweetened desserts and sweet snacks compose 19% of added sugar for Americans.[3]

---

[2] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[3] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, at 43 fig. 1-10 (9th ed. Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf#page=56

18. For decades, federal health authorities have recommended limiting added sugar intake.[4] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[5]

19. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free" and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

20. Defendant has capitalized on that demand. It markets Products whose predominant ingredient is allulose, a sugar, while labeling and advertising them as "Zero Sugar." Defendant thereby obtained an unfair competitive advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

**<u>Defendant's False and Misleading Representations</u>**

---

[4] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; .S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

[5] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.

21. Defendant manufactures, markets, and sells Goli Zero Sugar gummy dietary supplements, including Apple Cider Vinegar, Ashwagandha+, and Pre+Post+Probiotics gummies. The Products are sold in bottles at retailers throughout California and the United States, as well as online through Defendant's own website (goli.com), Costco, Walmart, The Vitamin Shoppe, Amazon and other third-party marketplaces.

22. Below is an illustrative sampling of the Products and the Representations:




23. The "ZERO SUGAR" claim is one of the key design elements of the Products' packaging. On the front labels of the Products' bottles, Defendant prominently states that the Products contain "ZERO SUGAR." Defendant repeats that message in related labeling and advertising.

24. Defendant's advertising repeats the Zero Sugar Representation across its marketing channels. On Defendant's own website, Defendant advertises the Products as containing "ZERO SUGAR."[6] True and correct screenshots from Defendant's official website are reproduced below:







25. Defendant, however, acknowledged the Products contained allulose as part of their "binding system." The presence of allulose, therefore, negates any "0g sugar" claim.

---

[6] *See* https://goli.com/products/zero-sugar-essentials-3-pack?selling_plan=3533471940&variant=45032813068484 (Last accessed on September 18, 2026).

a. **Apple Cider Vinegar- 60 count**









**Supplement Facts**

Serving Size: 2 Gummies
Servings Per Container: 30

| | Amount Per Serving | %DV |
|---|---|---|
| Calories | 10 | |
| Sodium | 15 mg | 1% |
| Total Carbohydrate | 4 g | 1%* |
| Dietary Fiber | 2 g | 7% |
| Total Sugar | 0 g | † |
| Includes 0 g Added Sugars | | 0%* |
| Vitamin $B_{12}$ (Cyanocobalamin) | 2.4 mcg | 100% |
| Apple Cider Vinegar (5% Acetic Acid) | 1,000 mg | † |
| SNZ Tribac® Probiotic Blend: *Bacillus coagulans* SNZ 1969® *Bacillus clausii* SNZ 1971™ *Bacillus subtilis* SNZ 1972™ | 8 mg | † |

* Percent Daily Values (DV) are based on a 2000 calorie diet.
†Daily Value (DV) not established



**Other Ingredients:** Soluble Tapioca Fiber, Allulose, Water, Pectin, Natural Flavors, Citric Acid, Sodium Citrate, Malic Acid, Fruit and Vegetable Juice (Color), Stevia Extract, Beet Root Powder, Pomegranate Powder.

b. **<u>Ashwagandha- 60 count</u>**




**Supplement Facts**
Serving Size: 2 Gummies
Servings Per Container: 30

| | Amount Per Serving | %DV |
|---|---|---|
| Calories | 5 | |
| Sodium | 15 mg | 1% |
| Total Carbohydrate | 4 g | 1%* |
| Dietary Fiber | 2 g | 7% |
| Total Sugar | 0 g | † |
| Includes 0 g Added Sugar | | 0% * |
| Vitamin $D_2$ (as Ergocalciferol) | 25 mcg | 125% |
| KSM-66® Ashwagandha Root Extract | 300 mg | † |
| Blend | 10 mg | † |
| L-Theanine | | |
| Maca Root Powder *(Lepidium meyennii)* | | |

* Percent Daily Values (DV) are based on a 2000 calorie diet.
†Daily Value (DV) not established

**Other Ingredients:** Soluble Tapioca Fiber, Allulose, Water, Pectin, Natural Flavors, Citric Acid, Sodium Citrate, Stevia Extract, Malic Acid, Fruit and Vegetable Juice (Color).

**Does NOT contain: yeast, wheat, eggs, gluten, soy, gelatin, peanuts, shellfish, dairy, synthetic colors, agave and salicylates.**

**Other Ingredients:** Soluble Tapioca Fiber, Allulose, Water, Pectin, Natural Flavors, Citric Acid, Sodium Citrate, Stevia Extract, Malic Acid, Fruit and Vegetable Juice (Color).

c. **<u>Pre + Post + Probiotic</u>**







**Supplement Facts**

Serving Size: 3 Gummies
Servings Per Container: 20

| Amount Per Serving | | %DV |
|---|---|---|
| Calories | 10 | |
| Sodium | 15 mg | 1% |
| Total Carbohydrate | 5 g | 2%* |
| Dietary Fiber | 4 g | 14% |
| Total Sugar | 0 g | † |
| Includes 0 g Added Sugars | | 0%* |
| Bacillus subtillus DE111® (1B Live Cells**) | 10 mg | † |
| Postbiotic (heat treated *Lactobacillus paracasei* MCC 1849) | 20 mg | † |
| Xylooligosaccharides (XOS) | 50 mg | † |

* Percent Daily Values (DV) are based on a 2000 calorie diet.
†Daily Value (DV) not established
** Contains 1B Live Cells at time of expiration provided that proper storage conditions are observed

**Other Ingredients:** Soluble Tapioca Fiber, Allulose, Water, Pectin, Natural Flavors, Citric Acid, Sodium Citrate, Malic Acid, Vegetable Juice (Color), Stevia Extract.

**Other Ingredients:** Soluble Tapioca Fiber, Allulose, Water, Pectin, Natural Flavors, Citric Acid, Sodium Citrate, Malic Acid, Vegetable Juice (Color), Stevia Extract.

26. Defendant similarly disseminates the Zero Sugar Representation through its official Amazon.com listings. As depicted below, the Products' listings identify

the gummies as “Zero Sugar.” “0g of sugar.”[7]




27. Defendant disseminated the Zero Sugar Representation through the Products’ packaging, its own website, Amazon.com, Walmart.com, and other online marketing. On Walmart.com, the Products are advertised as “Zero Sugar.” True and correct screenshots of the Products’ Walmart.com listings are reproduced below:[8]

---

[7] *See* https://www.amazon.com/dp/B0FNPW73LL?ref=clp_cat_related_p_0&th=1 (Last accessed September 18, 2026).

[8] *See* https://www.walmart.com/ip/Goli-Zero-Sugar-Trio-World-s-First-3-in-1-Pre-Post-Probiotic-Apple-Cider-Vinegar-Vitamin-B12-Probiotics-Ashwagandha-L-Theanine-Vitamin-D-Gummies-90-C/20386070907?classType=REGULAR&adsRedirect=true




28. The "zero sugar" representation communicates to reasonable consumers that the Products contain no sugar. This is the plain and ordinary meaning of "zero sugar" and federal and California law prescribe an objective standard governing when those terms may be used.

29. Defendant has made the Representations continuously, from the Products' September 2024 launch through the present.

30. "ZERO SUGAR" is an absolute, objective, and quantitative claim concerning a measurable physical attribute of the Products. Federal law permits that claim only when a product contains less than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, together with the regulation's other requirements. The Products' "0g" Total Sugars declarations on their Supplement Facts labels further reinforce the no-sugar message to consumers, making it

impossible for consumers to discover that the Products do, in fact, contain sugar.

**Allulose Is a Sugar**

31. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[9] No such rulemaking ever occurred.

32. In *Franco v. Chobani, LLC*, the Seventh Circuit recently confirmed that allulose is a sugar under federal labeling regulations. No. 25-2087, 2026 WL 2150193 (7th Cir. July 27, 2026). The court explained that 21 C.F.R. § 101.9(c)(6)(ii) defines "Total Sugars" as the sum of all free mono- and disaccharides and, because allulose is undisputedly a monosaccharide, it falls squarely within that definition. Accordingly, under the governing federal regulations, allulose is a sugar.

33. The industry also recognizes that allulose is a sugar. Indeed, one of the most predominant manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[10] and has noted in multiple

---

[9] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

[10] *Tate & Lyle Study*, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities

FDA filings that "[a]llulose is a monosaccharide and is classified as a sugar."[11] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[12]

34. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[13] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[14]

35. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

---

in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

[11] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[12] *See, e.g.*, *Cleveland Clinic, What You Need To Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

[13] *Memorandum from Center for Science in the Public Interest to Food and Drug Administration* (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf

[14] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

36. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, "zero sugar" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

37. The "zero sugar" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

38. Nutrient-content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D...").

39. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "zero sugar" nutrient content claims at issue in this case. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

> (i) The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving...; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

40. 21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive; each must be satisfied.

41. The Products do not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. The allulose in the Products must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

42. By Defendant's own admission on the Products' labels, allulose is an

ingredient in the Products. Each serving of the Ashwagandha+ and Apple Cider Vinegar Products declares 4 grams of Total Carbohydrate, 2 grams of Dietary Fiber, and 0 grams of Total Sugar and Added Sugar. Each serving of the Pre+Post+Probiotics Product declares 5 grams of Total Carbohydrate, 4 grams of Dietary Fiber, and 0 grams of Total Sugar and Added Sugar. None of the Supplement Facts panels contains a sugar-alcohol line, and the Pre+Post+Probiotics Product's label separately states "No Sugar Alcohols." Total Carbohydrate is calculated by subtraction and expressed to the nearest gram. 21 C.F.R. § 101.9(c)(6). After subtracting the declared Dietary Fiber and declared sugars, approximately 2 grams of carbohydrate per serving of the Ashwagandha+ and Apple Cider Vinegar Products, and approximately 1 gram per serving of the Pre+Post+Probiotics Product, remain as nonfiber carbohydrate not separately identified on the panels.

43. No other ingredient can supply those carbohydrates. The dietary ingredients declared in the Ashwagandha+ Product total approximately 310 milligrams, and those in the Pre+Post+Probiotics Product total 80 milligrams. The Apple Cider Vinegar Product declares approximately 1,008 milligrams of dietary ingredients, which cannot supply 2 grams of carbohydrate even if composed entirely of carbohydrate. Water contributes none. Stevia extract is a high-intensity sweetener used in minute quantities. Pectin, natural flavors, citric acid, sodium citrate, and malic acid all follow allulose in the Other Ingredients statements and are used at milligram levels. The fruit and vegetable juice is identified on the label as a coloring

agent and, in the Apple Cider Vinegar and Pre+Post+Probiotics Products, is listed ahead of only stevia extract and the trace color powders. Juice solids consist predominantly of free mono- and disaccharides, which are sugars within the meaning of 21 C.F.R. § 101.9(c)(6)(ii). Because each Product declares 0 grams of Total Sugar, the juice cannot be contributing carbohydrate on a gram scale without rendering that declaration understated on an additional ground.

44. Federal law generally requires ingredients to be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). The Ashwagandha+ and Pre+Post+Probiotics Products list allulose second under "Other Ingredients," immediately after soluble tapioca fiber and before water and pectin.

45. The Ashwagandha+ and Pre+Post+Probiotics Products' ingredient lists do not identify allulose as a sugar. Neither label places an asterisk after allulose referring to a statement below the ingredient list that states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar," as described in 21 C.F.R. § 101.60(c)(1)(ii).

46. The average consumer who noticed allulose on the ingredient list would be led to believe it was not a sugar, based on Defendant's repeated Zero Sugar Representation.

**<u>Defendant's Conduct Violates California's Food Labeling Laws</u>**

47. Defendant's marketing, advertising, distribution, and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and

Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a); *see also id*. § 110670.

48. Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

49. Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

50. (a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food); (c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

51. Because the Products bear "ZERO SUGAR" nutrient-content claims despite containing, on information and belief, approximately 2 grams of allulose per labeled serving for the Apple Cider Vinegar and Ashwagandha+ Products and approximately 1 gram per labeled serving for the Pre+Post+Probiotics Product—amounts exceeding the 0.5-gram threshold in 21 C.F.R. § 101.60(c)(1)(i)—Plaintiff alleges that the Products are misbranded under California law and that Defendant's advertising, distribution, and sale of the Products are unlawful.

**Reasonable Consumers Would Be Misled By Defendant's Deception.**

52. Reasonable consumers have no reason to look at the back label of the Products when presented with the conspicuous representation (on the front of the package and on marketing materials) that the Products contain "ZERO SUGAR." Consumers are not expected to look beyond misleading representations on the front of the package to discover that those representations are false.

53. Defendant's deception is especially misleading because a consumer who reviews the Supplement Facts panel would encounter a 0g Total Sugar disclosure, even though, on information and belief, the Apple Cider Vinegar and Ashwagandha+ Products contain approximately 2 grams of allulose per labeled serving and the

Pre+Post+Probiotics Product contains approximately 1 gram per labeled serving—four times and twice, respectively, the 0.5-gram threshold for a “sugar free” claim.

54. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew the Representations Were False**

55. Defendant knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when they marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a sugar; (c) its labels represented that the Products contained no sugar; (d) reasonable consumers would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the Representations enabled Defendant to charge a premium for Products containing sugar.

56. Defendant, as the marketer and distributor of the Products, controlled, or participated in, making the Representations on the Products’ labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite its knowledge that consumers reasonably rely on the Representations, Defendant chose to continue using them, thereby causing

consumers to buy or overpay for the Products.

**<u>Defendant's Zero Sugar Claims Injured Plaintiff and the Class</u>**

57. Defendant concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that a predominant ingredient is a sugar; (c) the fact that each serving contains or has contained a significant amount of allulose,— between two and four times the 0.5-gram cutoff, depending on the formulation; (d) the fact that the Products are not sugar free; and (e) the fact that the Products are misbranded under federal and California law when sold bearing the Representations.

58. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendant warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendant created; (f) purchased Products that Plaintiff and members of the Classes did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy only products represented to contain none; and (h) with respect to Plaintiff Bruno and members of the California Subclass (as defined below), purchased misbranded Products that could not lawfully have been sold in California.

59. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**Plaintiff Lacks an Adequate Remedy at Law**

60. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiff's inability to rely on Defendant's Representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Representations can address that prospective harm.

61. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Products as received, and disgorgement of revenues Defendant unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

62. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL and FAL carry four-year limitations periods, which may reach purchases not fully remediable under other causes of action.

63. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. Plaintiff's warranty and common-law claims are more limited, focusing on duties arising from Defendant's

Representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following proposed classes (collectively, the "Class," "Class Members" or "Members of the Class"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **Multi-State Consumer Protection Class:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for personal use in a state with a consumer-protection statute materially similar to the statutes identified herein ("Multi-State Class").
>
> **Illinois Subclass:** All persons in Illinois who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use ("Illinois Class").
>
> **California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use ("California Class").

65. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not

limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

66. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

67. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

68. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

69. Commonality: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether allulose is a sugar;

b. Whether the Products contained "ZERO SUGAR";

c. Whether reasonable consumers would understand Defendant's

representations and warranties concerning the Products to be untrue and misleading;

d. Whether Defendant's representations and warranties were material;

e. Whether the Products are misbranded under federal law and, with respect to the California Class, California law;

f. Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

g. Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

h. Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

i. Whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

70. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

71. Adequacy of Representation: Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this

case, and has retained competent counsel who are experienced in conducting litigation of this nature.

72. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

73. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

74. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

75. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

76. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

77. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

78. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure 23.

## CLAIMS FOR RELIEF

## COUNT I
**Violation Of Consumer Protection Statutes**
**(On behalf of Plaintiff and the Multistate Class)**

79. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80. Plaintiff brings this Count on behalf of himself and the Multi-State Class against Defendant.

81. The Consumer Fraud Acts of the States in the Multi-State Class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a. Illinois (815 ILCS 505/1, et seq.);

b. Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.);

c. Michigan (Mich. Comp. Laws § 445.901, et seq.);

d. Minnesota (Minn. Stat. § 325F.67, et seq.);

e. Missouri (Mo. Rev. Stat. § 407.010, et seq.);

f. New Jersey (N.J. Stat. § 56:8-1, et seq.);

g. New York (N.Y. Gen. Bus. Law §§ 349 and 350); and

h. Washington (Wash. Rev. Code § 19.86.010, et seq.)

82. These statutes are materially similar and prohibit deceptive or unfair conduct in the course of business.

83. Defendant represents that the Products are "ZERO SUGAR," even though each serving of the Apple Cider Vinegar and Ashwagandha+ Products contains approximately two (2) grams of allulose and each serving of the Pre+Post+Probiotics Product contains approximately one (1) gram of allulose. Plaintiff alleges that these representations are deceptive and materially misleading for the reasons set forth above.

84. Defendant's uniform labeling and marketing representations were directed at consumers and were misleading in a material way because they misrepresented the nature and value of the Products.

85. Given Defendant's position in the consumer products and dietary supplement industry and its reputation as an established national brand, Plaintiff and members of the Multi-State Class trusted and relied on Defendant's representations

when purchasing the Products.

86. As a result of Defendant's deceptive acts and practices, Plaintiff and members of the Multi-State Class suffered economic injury because they would not have purchased the Products, or would have paid less for them, had they known that the Products did not conform to the "ZERO SUGAR" representation.

87. Defendant's conduct, as alleged herein, demonstrated malice and/or reckless disregard for the truth, warranting punitive damages to the extent permitted by applicable law.

88. Plaintiff and members of the Multi-State Class suffered injury in fact and lost money as a result of Defendant's conduct described herein.

89. Plaintiff, individually and on behalf of the Multi-State Class, seeks actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, to the extent available under the applicable statutes.

## COUNT II
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. ("ICFA")**
**(On behalf of Plaintiff and the Illinois Class)**

90. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

91. Plaintiff brings this cause of action on behalf of himself and the Illinois Class members against Defendant.

92. Plaintiff and other Illinois Class members are persons within the context

of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1(c).

93. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

94. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

95. Plaintiff and the proposed Class are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

96. The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." 815 ILCS 505/2.

97. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2.

98. Defendant's conduct as alleged constitutes unfair and deceptive acts and practices violating the ICFA. Defendant engaged in deceptive marketing by misrepresenting and omitting material facts regarding the sugar content of the Products. The Representations were likely to mislead a reasonable consumer.

99. Plaintiff and the other Illinois Class members reasonably relied upon

Defendant's Representations, labeling, and omissions alleged herein regarding the Products' "ZERO SUGAR" claims.

100. Defendant's misconduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, violating 815 ILCS 505/1, et seq., by representing that the Products have characteristics or benefits that they do not have. Defendant also did not intend to sell the Products as advertised, in violation of 815 ILCS 505/2 and 815 ILCS 510/2(a)(9).

101. Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS 505/2 and 815 ILCS 510/2(a)(3).

102. Defendant's uniform marketing claims were deceptive and materially misleading. Defendant named and labeled the Products in a way that would most impact consumer choices and gain market share. Defendant knew that consumers purchasing the Products would reasonably understand the "ZERO SUGAR" representations to mean that the Products contained no sugar.

103. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Class members have suffered ascertainable money losses caused by Defendant's "ZERO SUGAR" Representations. Had they been aware of the true nature of the Products, Plaintiff and Class Members would have paid less for the Products or would not have

purchased them.

104. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Class Members seek relief, including restitution, actual damages, punitive damages, costs, and reasonable attorneys' fees, to the extent available under 815 ILCS 505/10a.

**COUNT III**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750 et seq.**
**(On Behalf of Plaintiff and the California Class)**

105. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

106. Plaintiff brings this claim on behalf of himself and the California Class against Defendant.

107. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

108. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

109. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

110. Defendant profited from sales of the falsely and deceptively advertised Products by representing that the Products contain "ZERO SUGAR," even though, on information and belief, the Apple Cider Vinegar and Ashwagandha+ Products contain approximately 2 grams of allulose per labeled serving and the Pre+Post+Probiotics Product contains approximately 1 gram per labeled serving—four times and twice, respectively, the 0.5-gram threshold.

111. Plaintiff seeks all available relief under the CLRA for all violations complained of herein.

112. Accordingly, Plaintiff and the California Class seek restitution and an order enjoining the acts and practices described above.

## COUNT IV
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the California Class)**

113. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

114. Plaintiff brings this claim individually and on behalf of the California Class against Defendant.

115. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

116. Plaintiff has standing to pursue this claim because he suffered an injury

in fact and lost money or property as a result of Defendant's conduct. Plaintiff purchased the Product for personal use, relied on Defendant's representation that it contained "ZERO SUGAR" and spent money that he otherwise would not have spent had he known it contained significant amounts of allulose per serving.

117. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or others similarly situated who are affected by the unlawful or unfair business practice or act.

118. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 et seq.

119. Defendant violated the UCL's proscription against engaging in Unlawful Business Practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500

et seq.; the CLRA, Cal. Civ. Code § 1770 et seq.; the Sherman Law, including, without limitation, Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770; and the federal food labeling requirements adopted by the Sherman Law, including 21 U.S.C. § 343(a)(1) and (r)(1)(A) and 21 C.F.R. §§ 101.13 and 101.60(c)(1).

120. Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein also constitute unfair business acts and practices within the meaning of Business & Professions Code § 17200 et seq. Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any alleged benefits attributable to it. There is no utility in representing that a product sweetened predominantly with sugar contains no sugar. Furthermore, Defendant's false and misleading representations are detrimental to competitors offering gummy dietary supplements that either do not make similar claims or do not contradict those claims by sweetening their products with sugar. Defendant's misrepresentations and omissions therefore harm consumers and the market as a whole.

121. Plaintiff and the California Class members suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions

about the presence and amount of sugar in the Products. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives in the marketplace. Such conduct is immoral, unethical, or unscrupulous; it offends established public policy and is substantially injurious to Plaintiff and the California Class members.

122. Plaintiff and the California Class members could not have reasonably avoided their injury or known that the Products' prominent labeling and marketing were inaccurate. Furthermore, consumers lack the specialized knowledge to determine whether an ingredient such as allulose is a sugar. As such, they could not have reasonably avoided the injury they suffered.

123. Pursuant to California Business and Professions Code § 17203, Plaintiff and the California Class members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

## COUNT V
## Violation of California's False Advertising Law ("FAL")
## Cal. Bus. & Prof. Code § 17500
## (On Behalf of Plaintiff and the California Class)

124. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

125. Plaintiff brings this claim on behalf of himself and the California Class against Defendant.

126. Defendant's acts and practices, as described herein, have deceived or are likely to deceive members of the California Class and the public. Defendant represents that the Products "ZERO SUGAR" even though depending on the variant, they contain approximately 1 to 2 grams of allulose per serving—two to four times the 0.5-gram cutoff.

127. Defendant has disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers. Defendant's above-described advertising is likely to deceive because Defendant affirmatively represents that the Products contain "ZERO SUGAR."

128. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue or misleading. Plaintiff and the California Class based their purchasing decisions on Defendant's materially false Representations and were injured in fact and lost money or property as a result.

129. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 *et seq*.

130. Plaintiff and the California Class members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT VI**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class, or alternatively, the California Class)**

131. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

132. Plaintiff brings this claim individually and on behalf of the Nationwide Class, or alternatively, the California Subclass against Defendant.

133. To the extent required, Plaintiff asserts this cause of action in the alternative to their legal claims, as permitted by Federal Rule of Civil Procedure 8.

134. Plaintiff and the Class Members conferred a benefit on Defendant in the form of revenues Defendant derived from their purchases of the Products.

135. Defendant knew of the benefit Plaintiff and the Class Members conferred on it.

136. Defendant has been unjustly enriched by retaining revenues from Plaintiff's and Class Members' purchases. That retention is unjust because Defendant misrepresented that the Products were "0g of Sugar", causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

137. Defendant accepted and retained the benefit of revenues derived from sales of the Products to Plaintiff and Class Members.

138. Defendant has thereby profited under circumstances that make it unjust for Defendant to retain the benefit.

139. Plaintiff and the Nationwide Class, or alternatively, the California Subclass, are therefore entitled to restitution in the form of revenues derived from Defendant's sale of the Products.

140. As a direct and proximate result of Defendant's actions, Plaintiff and the Class Members have suffered damages in an amount to be proven at trial.

141. Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's conduct.

142. Plaintiff and the Nationwide Class, or alternatively, the California Subclass lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law.

143. Legal remedies available to Plaintiff and the Nationwide Class, or alternatively, the California Subclass are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff has failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are

not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

144. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their respective purchases of the Products are determined to be less than the price premiums they paid. Without compensation for the full price premiums, Plaintiff and the Class Members would be left without the parity in purchasing power to which they are entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and each member of the proposed Class, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under Federal Rule of Civil Procedure Rule 23, including the appointment of Plaintiff's counsel as Class Counsel;

2. For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

3. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

4. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, consistent with applicable law and only under

causes of action that permit such relief;

5. For prejudgment interest on all amounts awarded;

6. For an order of restitution and all other forms of equitable monetary relief;

7. For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the Products with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct; and

8. For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: September 24, 2026 Respectfully submitted,

By: */s/ Daniel Srourian*

Daniel Srourian, Esq. (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Email: daniel@slfla.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215)-559-6072
klaukaitis@laukaitislaw.com

*Pro Hac Vice admission forthcoming*

Attorneys for Plaintiff and the Class